MORDECAI LAMB v. MILES CHAMNESS.

*Homestead—Bankruptcy.*

The homestead of a defendant bankrupt is protected from sale under execution by operation of the amendment to the bankrupt act of 1873, without regard to the date of the judgment lien. U. S. Rev. Stat., § 5045.

MOTION of plaintiff made before the clerk for execution to issue upon a judgment against the defendant, heard on appeal at Spring Term, 1880, of RANDOLPH Superior Court, before *Seymour, J.*

The clerk allowed the motion and from his order the defendant appealed, and the same was reversed by the judge, and the plaintiff appealed.

*Messrs. J. N. Staples* and *W. W. Fuller*, for plaintiff: Cited *Blum* v. *Ellis*, 73 N. C., 295; Bump on Bankruptcy, 142, 198 *et seq;* *Dawson* v. *Hartsfield*, 79 N. C., 334; *Dixon* v. *Dixon*, 81 N. C., 323.

*Messrs. Scott & Caldwell*, for defendant discussed the authorities referred to by the plaintiff, and insisted that the matter had been adjudicated against the plaintiff in the district court of the United States.

SMITH, C. J. The plaintiff recovered judgment against the defendant on March 1st, 1873, before a justice of the peace upon a debt contracted previous to the year 1868, and caused the same to be docketed in the superior court of Randolph county. The defendant, on May 27th, 1878, filed his petition in bankruptcy, and in November of the same year, obtained his discharge. The land, which the present proceeding is instituted to subject to the satisfaction of the judgment, was set apart by the assignee and exempted,

as the defendant's homestead, "subject to various liens against it."

On June 17th, 1878, the plaintiff filed in the bankrupt court proof of his debt, in which no reference is made to any security or lien, nor to any land or other property bound therefor, but describing his debt as a note "on which a judgment was taken in the superior court of Randolph county and docketed in said court," and annexing to his affidavit a transcript thereof. It is not stated that there is any land to which the lien attaches, nor any claim asserted by reason of such judgment thereto, and the form of proof is that of an unsecured debt.

The plaintiff applied by petition to the district judge, pending the proceeding in bankruptcy, and at a date not given, therein setting out his lien, for an order to enforce the same by a sale of the bankrupt's land. The defendant resisted the application, and as a defence alleged that the land had been assigned to him as his homestead by the sheriff, under the requirement of the laws of the state, and subsequently by the assignee, and that it was exempt under the express provisions of the amendment to the bankrupt act made in 1873. Upon the hearing, the application was denied and the petition dismissed with costs, with leave to the plaintiff to pursue in the courts of the state any remedy he may have against the exempted land.

Upon these facts and proof that the judgment remains unpaid, the plaintiff moves for leave to issue execution to sell said land and to enforce his judgment lien thereon, which motion was allowed by the clerk, and on appeal denied in the superior court; and from this refusal the plaintiff appeals to this court.

The only question presented in the record is whether the plaintiff is entitled to proceed and sell the defendant's homestead, set apart as exempt under the law of the United States, for the satisfaction of his debt, since for all other

purposes than the enforcement of the alleged lien, and to the extent of the value of the land charged, the indebtedness is discharged by the decree in the bankrupt court.

If the form of proof is of an unsecured debt, and we are inclined so to consider it, as it fails to designate any property subject to the lien or to show "whether any and what securities are held therefor," as required by the act and the rules adopted to carry it into effect, (Rev. Stat. U. S , § 5077) and the existence of the incumbrance is inferable only from the fact of the docketed judgment, it is by numerous decisions held to be a waiver and release of the lien, and the debt itself thus separated is extinguished, as are other debts of the bankrupt, by the discharge.

But waiving this point, the case is clearly within the contemplation of the amendments made to the bankrupt act in 1872 and 1873. The law, as thus amended, among other exemptions specifically mentioned, adds : " Such other property as now is or hereafter shall be exempted from attachment, or seizure, or levy or execution by the laws of the United States, and such other property, not included in the foregoing exceptions, as is exempted from levy and sale under execution or other process, or order of any court, by the laws of the state in which the bankrupt has his domicile at the time of the commencement of proceedings in bankruptcy, to an amount allowed by the constitution and laws of each state as existing in the year 1871; and *such exemptions* shall be valid *against debts contracted before the adoption and passage of such state constitution and laws, as well as those contracted after the same, and against liens by judgment or decree of any state court*, any decision of any such court, rendered since the adoption and passage of such constitution and laws, to the contrary notwithstanding. (§ 5045.)

It is plain that congress intended by this amendatory clause to prevent any discrimination among classes of debts in consequence of the different dates when they were in-

curred, and the inability of the states, under the restraints of the federal constitution, to put them upon the same footing, and such is the construction put upon the language in all the cases in the federal courts which we have examined. The defendant's homestead is clearly protected from the plantiff's debt, and his lien obliterated by force of the words used, if congress has the constitutional power thus to enact, and this is the only point about which there seems to be any controversy.

*In re Deckert,* a case decided in the circuit court of the United States for the district of Virginia, 10 Nat. Bank, Reg. 1, the distinguished chief justice of the supreme court expresses the opinion that this feature in the amendment, which extends the exemption to such property as a state may attempt to relieve, but is disabled from relieving, from the obligation of antecedent contracts, under the constitution, destroys the uniformity necessary to the validity of a bankrupt law, and is consequently inoperative and void; while the recognition of such exemptions as are legally in force in the several states and leave for distribution under the administration of the bankrupt law all such property as could then be reached by the creditor and appropriated to his debt, is within the competency and discretion of congress. This view is sustained by the circuit judge of this district, *in re Shipman,* 14 N. B. Reg. 570. The validity of the act, however, has been maintained in several other cases to which we will briefly refer, notwithstanding the high authority of Chief Justice WAITE.

*In re Smith,* 8 N. B. Reg. 401, ERSKINE, J., in the district court of the northern district of Georgia, in a learned and elaborate examination of the question, arrives at the conclusion " that the exemptions claimed by the bankrupt supplant the liens of state judgments and decrees." This opinion is re-affirmed by the same judge in another and subsequent case. *In re Jordan,* 10 N. B., Reg. 427. Again

the same view is taken by *Woods,* circuit judge, and now an associate justice of the supreme court, *in re Smith,* 14 N. B., Reg. 295, in the circuit court of the same district, who declares that, in his opinion, "congress may adopt the state laws on the statute books of the state, at a particular date, in reference to exemptions, and that the legislation is *uniform, although the laws in some of the states may afterwards be repealed by the legislature, or declared null by the courts."* Referring to the opposite opinion of the chief justice, he adds: "While therefore disposed to yield great weight to this high authority, I cannot forget that, in the opinion of the congress of the United States, this law is constitutional, and that the highest judicial authority has said that the courts ought not to pronounce a law unconstitutional, unless its incompatibility be clear, decided and inevitable."

So *Rives,* district judge, *in re Kean,* 8 N. B , Reg., 367, determined in the district court of the western district of Virginia, says: "We have even seen that the power to exempt and discharge is plenary and has no limitation, but in the discretion of congress. It cannot alter the state exemption for state purposes: this would be indeed, as urged, to alter state laws, but I do not see why congress may not, in its discretion, to effect certain objects in its bankrupt system, relieve these state exemptions of restrictions deemed hostile to the spirit, principles and aims of that system. * * * This act, therefore, in unfettering the state exemptions of certain restrictions and enlarging their operation, is, in its nature, mixed, and partakes of a state exemption in one aspect, and in another, of a congressional enlargement thereof."

So, in like manner, *in re Jordan,* 8 N. B., Reg. 180, *Dick,* district judge, says: "I have a very decided opinion that congress did not exceed the limits of its constitutional powers in enacting the act of March 3d, 1873. I also think that congress, under its general powers over the subject of

baukruptcy, *could avoid all liens, whether existing by statute*, by usage, by express contract or at common law."

The power of congress in passing a bankrupt law may unquestionably be exerted in destroying a lien, as in discharging a debt to which it adheres, and no objection founded upon these effects can lie against the present act. "Nor can it be truly aid," remarks Mr. Justice STRONG in the *Legal Tender Cases*, that congress may not, by its action, indirectly impair the obligation of contracts, if by the expression be meant rendering contracts fruitless or partially fruitless. Directly it may, confessedly, by passing a bankrupt act, embracing past as well as future transactions. This is obliterating contracts entirely." 12 Wall., 457. *Hepburn* v. *Griswold*, 8 Wall., 603.

The states possess no such power, and it was the evident intent of the act to give the sanction of a competent authority to the exemptions allowed under state laws, and make them uniform in their operation upon all debts alike. It does not undertake to incorporate those laws in the bankrupt system which were in force by virtue of state legislation, but to enlarge the scope of exemptions and make them effective when the state could not. This would seem to tend in the direction of securing uniformity, because it gives full instead of partial force to legislation, and supplies a defect irremediable by the act of the state. We feel constrained, therefore, until the question shall be authoritatively decided by the supreme court, and in this conflict of opinion, to say, in the concluding words of Judge WOODS, "resolving doubts in favor of the law, we must decline to declare it unconstitutional."

No error.                                                   Affirmed.