In re WOODARD.

(District Court, E. D. North Carolina. June 28, 1899.)

1. BANKRUPTCY—EXEMPTIONS—HOMESTEAD.
    Under Bankruptcy Act 1898, § 6, providing that "this act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition," the extent and the duration of a homestead allotment made in a court of bankruptcy are the same as prescribed by the law of the state. The bankruptcy act neither enlarges nor diminishes the exemption under the laws of the state.

2. SAME—ASSETS OF ESTATE—REVERSIONARY INTEREST IN HOMESTEAD.
    Where the exemption law of the state (Const. N. C. art. 10, §§ 2, 3) provides that every homestead, not exceeding a certain value, shall be exempt from sale on execution or other final process, and shall continue exempt

from the payment of any debt, after the death of the owner, during the minority of any of his children, the reversionary interest or title in land set apart to a bankrupt as his homestead, to accrue upon the termination of the homestead estate, is assets of his estate in bankruptcy, and must be sold by the trustee in bankruptcy.

In Bankruptcy. On review of decision of referee in bankruptcy.

A. J. Feild, for creditors.

PURNELL, District Judge. It is worthy of mention, and a source of regret, that though many briefs were promised, and a decision delayed for this reason, only one brief has been filed. Even the attorneys have not favored the court with an argument of the questions involved in this proceeding. A petition and answer being filed, and the cause heard before the referee, an order was entered directing the trustee to sell the reversionary or remaining interest of the bankrupt in the land allotted to him as a homestead, after the termination of such estate or interest or title. From this order the bankrupt appealed, and the question is certified for review.

Section 6 of the act of July 1, 1898, entitled "An act to establish a uniform system of bankruptcy," etc., provides:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing the petition."

This is essentially different from the provisions of the act of 1867 on the same subject. Hence the decisions construing that act do not apply. The section quoted provides the exemption allowed by the laws of the state where the bankrupt has his domicile shall not be affected. This means shall not be enlarged, as well as shall not be diminished. The section contemplates a conformity, as near as may be, to the statutes and decisions of the several states, when conformity is possible in carrying out the provisions of the act of congress. Nor can the decisions in other states, even in the courts of bankruptcy, control in a proper determination of questions of exemptions; for, while the system of bankruptcy is uniform, the exemptions are necessarily diverse and different, since they conform to the laws of the different states. To properly determine the question at bar, therefore, it is necessary to ascertain what exemption a citizen of North Carolina—call it "right," "title," or "estate"—is entitled to as a homestead. The state constitution (article 10, § 2) provides:

"Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars to be selected by the owner thereof, or in lieu thereof, at the option of the owner, any lot in a city, town or village, with the dwelling and building used thereon, owned and occupied by any resident of this state, and not exceeding the value of one thousand dollars, shall be exempt from sale under execution or other final process obtained on any debt."

Section 3 of the same article exempts the homestead from the payment of any debt, after the death of the owner thereof, during the minority of his children, or any one of them.

The provisions of the constitution exempt from sale under execution real estate not exceeding in value $1,000, but do not confer or pretend to confer any title in addition to that which the debtor already has; nor can it be distorted into meaning that the debtor

shall have $1,000, but it shall not exceed that amount. It is an exemption, call it by whatever name may suit the stickler for words, and terminable at the happening of certain events, such as the death of the party to whom it is secured, and the arrival of his youngest child at the age of maturity, when it may be sold under judgments docketed in the superior court which are liens from their test. This is in accord with the statutes, and decisions of the supreme court, of the state. Vanstory v. Thornton, 112 N. C. 196, 17 S. E. 566; Formeyduval v. Rockwell, 117 N. C. 320, 23 S. E. 488, and cases cited. A docketed judgment during the existence of this exemption is not barred by the statute of limitations during the existence of the homestead after it is laid off or allotted. Formeyduval v. Rockwell, supra. The extent and duration of a homestead allotment made in the bankrupt court are the same as that prescribed by the law of the state. The state court gives efficacy to the homestead allotment when made in the bankrupt court, but the creditors of a bankrupt must prosecute their claims and enforce their liens in the bankrupt court, and not in the state court. Blum v. Ellis, 73 N. C. 293; Withers v. Stinson, 79 N. C. 341; Dixson v. Dixson, 81 N. C. 323; Lamb v. Chamness, 84 N. C. 379; Windley v. Tankard, 88 N. C. 223. It will be seen from these authorities that creditors have some rights, shadowy and deferred it may be, against debtors, even under the homestead provisions of the state constitution. They may obtain judgments and acquire liens,—liens they may not live to realize, but which may benefit their heirs or estate when the exemption terminates under the law.

Section 2, cl. 11, confers on courts of bankruptcy jurisdiction to determine all claims of bankrupts to their exemptions, restricted by the provisions of section 6, before quoted, which contemplates that this shall be done without enlargement or diminution of such exemption as is allowed by the laws of the state where the bankrupt has his domicile. There is no provision of law, after an adjudication in bankruptcy, under which the lien of a judgment creditor can be preserved until the termination of the exemption. Such debt is provable in bankruptcy (section 63a), and upon the granting of a discharge the bankrupt would not only be relieved of the debt, but the judgment lien would be removed from his property. Only four classes of debts (those mentioned in section 17) are excepted, and not affected by a discharge in bankruptcy, and a judgment or judgment lien is not one of these four. To preserve the judgment lien which the creditor has under the state law, the bankruptcy proceedings would, of necessity, be kept open and pending indefinitely, awaiting the falling in of the homestead exemption. To discharge the bankrupt from the judgment and the lien incident thereto would be to enlarge the exemption. To retain the proceeding awaiting the termination of the exemption would be a denial of the relief intended to be given insolvent debtors by the bankrupt law. One would be an injustice to the creditor; the other, an equal or greater injustice to the bankrupt. The law does not contemplate either, but is intended to be fair and just to both. There are other contingencies which may arise, not necessary to consider,—other rights of the creditors and debtors connected with the homestead exemption.

It is alleged in the petition that there are judgments against the bankrupt, and this is not denied in the answer, but it is claimed by the bankrupt that these judgments are not liens on the homestead. This is what may be termed "sticking in the bark," and "begging the question." It can make no material difference how this question is determined,—even if it had raised an issue of fact as to the existence of the judgments. The land allotted as an exemption is the property of the bankrupt, and, by operation of law, when the adjudication in bankruptcy was made all of his property was put in custodia legis, and became vested in the trustee, when appointed. The bankrupt is entitled to the enjoyment of the land until by the operation of the state law the exemption terminates. Simply this, and nothing more. If discharged of his debts, he is vested with a fee, or such title as he may have, relieved of the liability to, or annoyance of, creditors. This would be to appreciate his exemptions, and deprive his creditors of the right to obtain judgments and acquire liens. Thus, the exemption would be increased or enlarged, and the bankrupt given more than is contemplated in the state law, or intended by the act of congress. It is the duty of the trustee to collect and reduce to money all property of the estate (section 47a), and to set apart the bankrupt's exemptions. The interest or title of the bankrupt in the land allotted as a homestead exemption after the termination of the time for which such property is exempted from sale is property. Hence it is the duty of the trustee to reduce to money, by sale, such property or title or reversion, and apply the proceeds to the payment of debts proved according to law. The order of the referee is affirmed, and the trustee herein will proceed, in accordance therewith, to reduce to money the property of the bankrupt in the land allotted as a homestead exemption, after the termination of such exemption according to law, as herein decided.