Ruffin, C. J.
 

 The instruction, respecting the operation of the decree and certifícate of bankruptcy, is sustained by the express provisions of the Act of Congress of August 19th 1841. The first section provides for both a voluntary application of all debtors to be declared bankrupts, and for an application by creditors of certain classes of debtors, to have them so declared. In a case of the latter kind, it is, contrary to the rule in England, enacted in the close of the section, that the decree passed by the Court, as therein directed, “shall be deemed final and conclusive, as to the subject matter thereof.” But the provision is different as to a case of the former kind. Though it may be in the power of Congress to discharge insolvents from their debts, at their own instance, it was, we believe, a new principle in the law of bankruptcy, and so strongly tends to encourage men dishonestly to contract debts, which they do not expect, nor mean to pajr; as to make it highly proper, as far as possible, to guard the Courts from imposition, and protect creditors from fraud in obtaining a discharge. It is enough, to put it in the power of a man, after running in debt, to spend all his property, and then upon his own motion, and upon his own oath, free himself, and his future acquisitions, from liability to his creditors. The law should therefore see, at least, that the party had no property, or that he had freely surrendered all that ought to go towards the sat
 
 *143
 
 isfaction of his debts. It is a just and fitting requital to one, who attempts to get a discharge by denying that he owns property, when in fact he does, or by purposely concealing any part of what he does own, to refuse him, in the first place, the discharge upon any terms, and, in the next place, to hold a discharge, obtained by such means ineffectual and void, whenever the fraud shall appear. Accordingly, the Act of Congress contains several provisions, intended to counteract' the mischiefs, that might arise from this new principle. The first section requires the debtor to set forth in his petition, “ an accurate inventory of his property, rights, and credits of every name, kind and description, and the location and situation of each and every parcel and portion thereof.” The fourth section enacts, “ that every bankrupt, who shall
 
 bona fide
 
 surrender all his property” (with certain exceptions, not material here) “ for the benefit of his creditors, and shall comply with the orders of the Court, shall be entitled to a full discharge from all his debts, to be decreed and allowed by the Court which has declared him a bankrupt, and a certificate thereof granted to him by such Court accordingly’’, upon his petition filed for that purpose. And if any such bankrupt shall be guilty of any fraud or wilful concealment of his property or rights of property, or shall have preferred any of his creditors, contrary, &c. he shall not be entitled to any such discharge or certificate.” Thus far the Act provides only for the grant or the refusal of the certificate by the Court of the United States, proceeding in bankruptcy. One who has been guilty of fraud, or the wilful concealment of property, “ shall not be entitled to a discharge or certificate.” The bar to the discharge is not temporary, or until the debtor shall supply the omission in his inventory, or make a further and full disclosure ; but it is peremptory and perpetual, at least, in respect of that application, as a penalty for the attempt to commit a fraud on the Act, by a fraudulent conveyance, or wilful conceal
 
 *144
 
 ment of property. But that is not all. For, the Legislature was aware that such dishonest practices might escape the vigilance of the most cautious Judge, and iftended, if they should, that notwithstanding the success in his application, the' dishonest party should not permanently have the immunities meant for honest insolvents ; and therefore, it was provided further, that such discharge and certificate, when duly granted, shall, in all Courts of Justice, be deemed a full and complete discharge of all debts, &e. and may be pleaded as a full and complete bar to all suits brought in any Court of judicature whatever, and the same shall be conclusive evidence of itself in favour of such bankrupt,
 
 unless the same shall he impeached
 
 for some fraud or wilful concealment by him, of his property or rights of property as aforesaid, contrary to the provisions of this Act, on prior reasonable notice, specifying in writing such fraud or concealment.” The remedy of the creditor is not, therefore, an application to the Court of bankruptejy upon the ground of fraud newly discovered : but it is by replying the fraud of the bankrupt to his plea of the certificate, so as thereby to avoid the bar. As the certificate may be pleaded in all Courts, it follows that it may be impeached in any Court, it whieh it may be set up as a bar. There was, therefore, no error in this part of the instructions to the jury.
 

 The Court concurs also in the opinion with respect to the inference to be drawn from the continued possession and use by the defendant, of the property he conveyed
 
 to
 
 his father. The whole was conveyed at once, and the personalty consisted of the perishable articles of a wagon and team. There was a conflict of testimony as to the consideration and purposes of the conveyance, whether there was an adequate, or even any valuable consideration, or not. In that state of facts, and when it appears that the defendant was, at the time, indebted in sums which remain unpaid to this day, and which, the defen
 
 *145
 
 dant says, he is unable to pay, a continued possession and exercise of ownership, for upwards of nine years, over all the property conveyed to his father, and, as far as appears, without any act or claim of ownership by the father, do surely raise a presumption of a fraud; that is to say, either that the conveyance, though absolute upon its face was not
 
 bona fide
 
 for the benefit of the father, but upon some secret trust for the insolvent vendor or donor ; or, at the least, that there was an intention to give the son a false credit upon his continuing apparent ownership of the property. The presumption is not, indeed, a peremptory and conclusive legal one, establishing per
 
 se
 
 the fraud. But, in the language of his.Honor, those facts “raised
 
 a
 
 presumption,” that the conveyance was fraudulent ; which, however, would be' repelled, if upon the whole evidence, including the continued possession and enjoyment of the property, the jury thought, that the conveyance was executed for an adequate valuable consideration and
 
 bona fide.
 
 Formerly, indeed,it was held, that the continued possession of personal chattels by a vendor, after an absolute conveyance, was
 
 perse
 
 fraudulent in law — so strong was the presumption then supposed to be. It is true,
 
 Edwards
 
 v.
 
 Harbert,
 
 and that class of cases have not been sustained in their whole extent for many years past. Yet, they are not so far departed from, as to authorise the Court to say, that such continued possession and enjoyment do not create a presumption of covin, either by way of a secret trust, or the giving of false credit. On the contrary, the ground, on which such facts are allowed to go to the jury, is, that a presumption of fraud, does arise from them; though it may, or may not be, sufficient to authorise the finding of the fraud, as it may be fortified or impaired by other evidence. Indeed, in the present ease, the presumption of a fraud was cogent, considering the relation of the parties, and the duration of the enjoyment; for a possession, derived from a
 
 *146
 
 father, of the wagon and team, and continued so long, is, by presumption of law, a gift, unless the contrary be clearly proved; and a principal ground for that rule» is the security of the son’s creditors.
 
 Carter
 
 v.
 
 Rutland,
 
 1 Hay. 97.
 

 The purchase of Morrison, without taking a deed, did not divest the defendant’s title to the land. Yet, it is not every omission of property in the schedule that invalidates the decree of discharge, but only a fraudulent conveyance or wilful concealment of it. It might have been an honest mistake in the defendant, in supposing that he ought not to inventory the land which Morrison had purchased. On the other hand, the delay of the purchaser for seven years, to take a deed from the sheriff, and the enjoyment during that period, by the defendant, afford reasonable grounds for suspecting the fairness of the purchase, and that some interest remained with the defendant. It was, therefore, as we think, a proper point to be left to the jury, whether the defendant had not some interest in the land, and wilfully concealed it; and, if the case depended on that point, the Court would feel obliged to award a
 
 venire de novo.
 
 But the point in respect to that land became immaterial, by the finding of the jury, as to the wagon, horses, and gear; for, although the defendant may have innocently omitted his naked legal title to the land, if it was purchased
 
 bona fide
 
 by Morrison, yet that did not excuse the omission of the chattels, which Morrison did not buy, but which belonged to the defendant for the purposes of his creditors, and, as the jury found, were wilfully concealed by him. Such conce'alment of those articles as effectually excludes the party from the benefit of the certificate, as if he had also' fraudulently concealed the land ; and, therefore, the presiding Judge was right, as it turned out, in saying that Morrison’s purchase of the land, did not affect the case; and the judgment must
 
 be affirmed.
 

 Pbr Curiam. Judgment affirmed.